IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **KOURTNEE GREENWOOD** | ) | |
| | ) | |
| **V.** | ) | 2:05-CV-00733-MHT-WC |
| | ) | |
| **DAVID STREIFF** | ) | |

**PETITIONER'S MEMORANDUM**

At the status conference held in this matter on November 19, 2007, counsel for the Respondent argued that the issue of prosecutorial misconduct in procuring the absence of defense witness Jamar Brown had been raised and addressed at Mr. Greenwood's trial. This memorandum is submitted in opposition to that contention. Because the Court directed that the memorandum be limited to about five pages, this memo is limited to a discussion of the trial testimony.

On October 29, 2002, Mr. Greenwood and Mr. Brown were apparently jointly tried on the charge of Robbery 1st Degree.[1] This trial resulted in a mistrial. (Case Action Summary, Doc. 34, Exhibit P-1, p. 2.) On December 11, 2002, a retrial was held against Mr. Greenwood alone, which resulted in a jury finding of guilt of the charged offense. (Jury Verdict, Doc. 34, Exhibit P-1, p. 13.)

Immediately prior to the start of the December 2002 retrial, there was a brief discussion on the record of the possibility that Mr. Greenwood's counsel would call Mr. Brown as a witness on Mr. Greenwood's behalf. The colloquy did not reveal the State's role in procuring Mr. Brown's absence, but solely related to whether or not the State would be permitted to offer certain rebuttal testimony, that had earlier been excluded by the Court, if Mr. Brown was a witness. (Trial Transcript, Doc. 34,

---

[1] No transcript of the October 2002 trial has been filed with this Court. Petitioner's counsel is attempting to obtain a transcript of that trial.

1

Exhibit P-1, following p. 48, at Trial Transcript pages 5 - 8.)

During jury selection, the Court included Mr. Brown on the list of possible witnesses who were disclosed to the jury in advance of trial. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 13.)

The State called only two witnesses in its case in chief. The robbery victim LC testified that on April 9, 2002, he was robbed by Jamar Brown and by a second person who had "twists" in his hair. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 50.) LC said that after the robbery, the two robbers got into a red S10 pickup truck. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 52.) LC identified Mr. Greenwood in court as the second robber, the one who had "twists" in his hair. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 54.)

The second State's witness, police detective Buce, testified about his preparation and presentation of a photo line-up from which LC had identified Mr. Greenwood. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 78 - 90.) Detective Buce acknowledged that there was no evidence linking Mr. Greenwood to this offense other than the identification made by LC. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 90.)

After the trial had begun and the robbery victim LC had testified, the defense counsel asked the trial court to order the court reporter to produce a transcript of LC's testimony in the October 2002 trial, on the basis that LC had not previously disclosed the identity of the thirteen year old boy who was with him at the time of the robbery. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 55.)

Following the lunch recess, Mr. Greenwood's trial counsel raised the issue of Mr. Brown testifying for Mr. Greenwood. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 58 - 61, reproduced as Petitioner's Exhibit B, attached to this memorandum.)

At the Court's request, the court reporter furnished the transcript of LC's testimony at the October 2002 trial and the transcript of Mr. Brown's guilty plea colloquy. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 61, 62.)[2] The prosecutor stated that the trial transcript contained the thirteen year old's name, Serillo. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 61.) The judge stated that the transcript of the plea colloquy contained an offer of proof that Jamar Brown "was with Kourtney Green – it said Green" and approached the victim. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 62.)

Mr. Greenwood's counsel indicated that he thought the plea colloquy was a misstatement. He said he was still undecided as to whether or not he would call Jamar Brown as a witness. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 62 - 63.)

During a jury out hearing following Detective Buce's testimony, the State argued that it should be permitted to rebut the "only evidence" testimony of Detective Buce with testimony alleging that the victim of a separate robbery perpetrated by Mr. Brown established a link for Mr. Greenwood and a relationship with Mr. Brown. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 90.)

However, the testimony proffered by the State out of the jury's presence, in support of this

---

[2]Neither transcript appears to have been filed as part of the record in the present case. Petitioner's counsel is attempting to obtain these transcripts.

theory, did <u>not</u> establish that Mr. Brown and Mr. Greenwood knew each other. In fact, the grand jury had not indicted Mr. Greenwood for the second, separate robbery. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 95.) The testimony proffered out of the jury's presence showed only that the second, separate victim described being robbed by Mr. Brown and said that after the robbery Mr. Brown got into a red S-10 pickup truck. This second victim also "phoned in" Mr. Greenwood's name and an alias of Mr. Brown, to a police officer. Since LC had apparently described Brown and his cohort as getting into a red S-10 pickup truck, the police prepared a photo line-up containing Mr. Greenwood's picture, to be shown to LC. However, the testimony offered no explanation as to why or for what purpose the second victim had referenced Mr. Greenwood's name. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 92 - 97.)

The trial judge denied the State's request to submit this proof before the jury. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 97.) Following the denial of Mr. Greenwood's motion for judgment of acquittal, Mr. Greenwood's trial counsel called four witnesses, including Mr. Greenwood himself. Following three of the witnesses, Mr. Greenwood's counsel stated that he would not be calling "that other witness," presumably Jamar Brown. However, he did not give a reason for this decision. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 137.)

Each of the four defense witnesses testified that Mr. Greenwood had never worn "twists" in his hair. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 102, 105, 112, 121 - 123, 140 - 141.) In addition, Mr. Greenwood testified that he did not "even know of a Jamar Brown" or of LC. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript

page 140.)

The State called one witness in rebuttal, who testified that he had seen Mr. Greenwood with Jamar Brown on March 30, 2002, and that at that time Mr. Greenwood wore twists in his hair. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 147 - 149.)

During the trial judge's closing instructions to the jury, Mr. Greenwood called out to the prosecutor to tell the jury that Jamar Brown had told her he did not know Mr. Greenwood. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 189 - 192.) The trial judge ordered Mr. Greenwood to be confined to the jury room during the remaining proceedings. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 192 - 193.)

After the jury began its deliberations, the trial court again asked the parties to put on the record any of their contentions regarding Jamar Brown. Mr. Greenwood's counsel repeated again that Mr. Brown had said Mr. Greenwood was not with him during the robbery of LC; that Mr. Brown had apparently changed his mind about testifying based on a possible adverse affect on his sentencing; and that he had met with Mr. Brown and Mr. Brown's counsel, the prosecutor, and the District Attorney, in an attempt to persuade Mr. Brown to testify and to persuade the others to encourage Mr. Brown to testify. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 206 - 209.)

The prosecutor stated that she had heard Mr. Brown say that he did not know Mr. Greenwood. She also stated that during Mr. Brown's plea colloquy, Mr. Brown had admitted the proposed statement of facts, which included the participation of Mr. Greenwood in LC's robbery. She also stated that she told Mr. Brown that "what the State wanted him to do was testify truthfully, then get on the witness stand, tell the truth and then there would be no problem. If he gets on the

witness stand and lies, then that would be a problem for me." (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript pages 209 - 210.) She also stated that she told Mr. Brown repeatedly "that none of us have any effect on sentencing. There was no threats made to him or promises on either way concerning his sentence. As a matter of fact, he was told that the State of Alabama . . . does not sentence. The Court does that. And all the State of Alabama wanted him to do was testify truthfully." (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 211.)

Mr. Brown's counsel, Winston Durant, also stated that he had told Mr. Brown that only Mr. Brown could make the decision to testify or not and that "all we wanted him to do was . . . to tell the truth," but that Mr. Brown had indicated he did not want to testify. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 210.)

Mr. Greenwood stated that he had observed the meeting with Mr. Brown, because he was in "the little holding cell right there" and he again protested. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 212.) He said that he wanted to say something to the judge, out of the jury's presence. Although the trial judge agreed, there is no indication in the trial transcript of any conversation between the trial court and Mr. Greenwood. (Trial Transcript, Doc. 34, Exhibit P-1, following p. 48, at Trial Transcript page 213.)

Thus, there was no explicit discussion at the trial of the issue of prosecutorial misconduct in the prosecutor's improper persuasion to Mr. Brown, nor was there any indication that Mr. Greenwood had knowledge of that persuasion at the time of his trial.

Respectfully submitted,

**s/Christine A. Freeman**

**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Petitioner Kourtnee Greenwood
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Audrey Jordan, Kristi Hagood, Office of the Attorney General of Alabama, Criminal Appeals, 11 South Union Street, Montgomery, Alabama 36130.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Petitioner Kourtnee Greenwood
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org