IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

KOURTNEE GREENWOOD, #179 810 *

    Petitioner,            *

      v.                *         2:05-CV-733-MHT
                                      (WO)

JAMES DeLOACH,  WARDEN, *et al*., *

    Respondents.      *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

      Kourtnee Greenwood ["Greenwood"], filed this 28 U.S.C. § 2254 petition for habeas corpus relief on July 22, 2005. Greenwood is serving a term of life imprisonment, as a habitual offender, after being convicted on December 11, 2002 by a jury in the Circuit Court for Montgomery County, Alabama, of first degree robbery.  On appeal, the Alabama Court of Criminal Appeals affirmed Greenwood's conviction and sentence and entered a certificate of judgment on August 15, 2003.[1] (*Doc. No. 15, Exhs. B, C.*)

      Greenwood filed a Rule 32 petition on September 15, 2003.  He challenged his conviction on the following grounds:

---

[1]On appeal, Greenwood argued that the trial court erred in denying his motion for acquittal on the ground that the evidence was insufficient to support his first degree robbery conviction because the robbery victim's identification was inconsistent and, thus, unreliable. (*Doc. No. 15, Exh. B.*)

1. His sentence exceeded the maximum because he was indicted for robbery in the third degree rather than robbery in the first degree;

2. His indictment was insufficient because it failed to allege that he caused "serious physical injury;

3. The trial court lacked jurisdiction because he was illegally arrested;

4. He was improperly sentenced under the Habitual Felony Offender Act;

5. Newly discovery evidence showed that Petitioner was denied the right to have a favorable witness testify on his behalf in violation of his Sixth and Fourteenth Amendment rights;

6. Trial counsel rendered ineffective assistance by:

> a) failing to subpoena a thirteen year-old boy, "Serillo," who was with the victim at the time of the robbery;
> b) by failing to subpoena three children Greenwood claimed he was babysitting on the night of the robbery; and
> c) failing to object to the jury instruction regarding unanimous verdicts.

(*Doc. No. 15, Exh. D*.)

The trial court denied Greenwood's Rule 32 petition on January 13, 2004. Greenwood appealed the denial of his post-conviction petition. The Alabama Court of Criminal Appeals affirmed the lower court's ruling on August 13, 2004. The appellate court overruled Greenwood's application for rehearing on August 27, 2004, and on October 15, 2004 the Alabama Supreme Court denied his petition for writ of certiorari.  (*Doc. No. 15, Exhs. D, E, F, G, H.*)

Greenwood filed a second Rule 32 petition on November 8, 2004.  In this second post-conviction petition, Greenwood presented the following issues:

2

1. Newly discovered evidence existed which showed that co-defendant Brown was intimidated by the State into refusing to testify on Greenwood's behalf and that he was now willing to testify; and

2. Trial counsel was ineffective for failing to subpoena Serillo to testify so that he could refute the testimony of victim/witness Larry Copeland.

(*Doc. No. 15, Exh. J.*)

The trial court denied the petition on November 18, 2004. On February 15, 2005 the Alabama Court of Criminal Appeals affirmed the trial court's denial of Greenwood's second post-conviction petition. The appellate court overruled Greenwood's application for rehearing on March 11, 2005. The Alabama Supreme Court denied Greenwood's petition for writ of certiorari on May 13, 2005 and the Alabama Court of Criminal Appeals entered a certificate of judgment the same day. (*Doc. No. 15, Exhs. K, L, M, N, O.*)

In his petition filed July 22, 2005, as amended October 7, 2005, Greenwood presents the following claims for relief:

1. Newly discovered material facts exist which require that his conviction or sentence be vacated because the State violated his right to compulsory process when it corruptly persuaded a key witness, co-defendant Jamar Brown, not to testify in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution;

2. He received ineffective assistance of counsel in his first two Rule 32 petitions in regard to the manner in which his newly discovered evidence claim was presented in the state courts which resulted in the claim not being addressed on the merits;

3. The U.S. Constitution or the Constitution of the State of Alabama requires a new trial, a new sentencing proceeding, or other relief because he received ineffective assistance of trial counsel when counsel failed to subpoena a key

witness, Serillo, which violated his right to confront witnesses in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution;

4.  He was entitled to an evidentiary hearing on the issue of whether he received ineffective assistance of trial counsel when counsel failed to subpoena a key witness, Serillo;

5.  He received ineffective assistance of trial counsel when counsel failed to subpoena Jamar Brown to testify at trial; and

6.  He received ineffective assistance of trial counsel because counsel did not properly investigate the substance of the victim's (Larry Copeland) testimony by obtaining a copy of his testimony at the first trial which ended in a mistrial.

(*Doc. No.* 2.)

In an amended petition filed October 7, 2005 Greenwood presented an additional claim for relief.  Specifically, Greenwood alleged that trial counsel failed to present a constitutionally adequate alibi defense where he failed to investigate properly Greenwood's whereabouts on the day of the robbery and failed to sufficiently investigate accomplice testimony which would have corroborated his alibi defense/testimony.  (*Doc. No. 19*.)

## II.  DISCUSSION

*A.  Disposition of Claims*

In their answer,  Respondents acknowledge  that Greenwood presented his "newly discovered evidence" claim in both his first and second Rule 32 petitions and on appeal from the denial of these petitions and that this claim was properly adjudicated in the state courts.[2]

---

[2]Respondents also make an alternative argument that Greenwood's "newly discovered evidence" claim is procedurally defaulted.  Specifically, Respondents maintain that Greenwood "raised the underlying claim of newly discovered evidence as a state court claim, [and] did not seek direct appeal or collateral

`(continued...)`

Respondents maintain that Greenwood's claims that trial counsel was ineffective for failing to subpoena Serillo and that the trial court erred in failing to hold an evidentiary hearing on this claim were likewise properly adjudicated on the merits by the state courts. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). With regard to Greenwood's allegations that he received ineffective assistance during his Rule 32 proceedings, that trial counsel performed deficiently when he failed to subpoena Jamar Brown, that trial counsel was ineffective for failing to investigate the victim's previous trial testimony from his first trial which ended in a mistrial, and that trial counsel was ineffective for failing to present a constitutionally adequate alibi defense by failing to properly investigate Greenwood's whereabouts on the

---

[2](...continued)

review of th[is] issue[] as a violation of his federal right to compulsory process under the Sixth and Fourteenth Amendments." (*Doc. No. 12 at 13*.) A review of Greenwood's Rule 32 proceedings, however, shows that he presented the following issue for review:

> "Whether the Petitioner was denied his rights to have compulsory process for obtaining witnesses in his favor violation Petitioner 6th and 14th Amendments of the United States Constitution, and violation Petitioner rights to due process."

(*Doc. No. 15, Exh. D at 18*.) In support of this claim, Greenwood argued that the State promised his co-defendant (Jamar Brown) a more lenient sentence if he did not testify at Greenwood's trial. (*Id. at 19*.) Greenwood further argued that he was not aware of this information until he received an affidavit from Brown which advised him of the basis for his decision not to testify, and that he did not receive the affidavit until approximately three and a half months after his conviction. (*Id. and 33-34*.)

On appeal, the appellate court addressed Greenwood's claim that the trial court erred in failing to vacate his conviction based on newly discovered evidence noting, in part, that Greenwood offered an affidavit from Brown which included newly discovered evidence of prosecutorial misconduct in intimidating a key witness. (*Doc. No. 15, Exh. F at 3*.)

Based on the foregoing, the court concludes that the record supports Respondents' argument that Greenwood exhausted properly his claim of newly discovered evidence in the state courts as the facts presented in support of the claim, both at the state court level and in the instant habeas petition are essentially the same. (*See also Doc. No. 34, Exhs. V, W*.)

day of the robbery and failed to sufficiently investigate accomplice testimony which would have corroborated his alibi defense testimony, Respondents state that these claims are presented for the first time in the instant petition. Consequently, Respondents maintain that the foregoing claims are procedurally defaulted because they were not raised in accordance with the state's procedural rules. Greenwood filed a response to the answers of Respondents. After reviewing the § 2254 petition, the answers of Respondents (*Doc. Nos. 12, 21, 37*) and Greenwood's responses, (*Doc. Nos. 12, 19,21, 23, 38*), the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

B. *Standard of Review*

To prevail on his § 2254 claims, Greenwood must show that a decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[3] *see Williams*, 529 U.S. at 412-13.

----

[3] 28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be Greenwooded with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)     resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(continued...)

A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Id*. at 405-06. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id*. at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409). It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide. *See Williams*, 529 U.S. at 411. A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong." *Lindh v. Murphy*, 96 F.3d 856, 876-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). Further, a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "However, the statutory presumption of correctness applies only to findings of fact made by the state court,

---

[3](...continued)

(2)     resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

not to mixed determinations of law and fact." *Parker*, 244 F.3d at 835 (*citing McBride v.*

*Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)).

*C. The Newly Discovered Evidence/Prosecutorial Misconduct Claim*

Greenwood alleges that newly discovered material facts exist which require that his conviction and sentence be vacated.[4] In support of this allegation, Greenwood asserts that "[t]he State violated [his] right to have compulsory process for obtaining witnesses in his favor by corruptly persuading a key witness not to testify in violation of the 6th and 14th Amendments of the U.S. Constitution." (*Doc. No. 2 at 1.*) The evidence at issue concerns an affidavit Greenwood received from Jamar Brown[5] in March 2003, several months after Greenwood's conviction. The gist of Brown's affidavit indicates that Assistant District Attorney Vernetta Perkins offered Brown a lighter sentence if he would not testify at Greenwood's trial. Ms. Perkins, Brown's attorney, Greenwood's attorney, and the trial court where all cognizant of what the substance of Brown's purported testimony would be at trial, *i.e.,* that he did not know Greenwood and that Greenwood was not his accomplice on the night of the robbery. Greenwood contends, however, that what was *not* known at the time of his trial was  information in Brown's affidavit that Ms. Perkins engaged in  misconduct by persuading Brown not to testify on Greenwood's behalf. Greenwood contends that this allegation of prosecutorial misconduct and resulting constitutional infringement of his right to have a witness testify in his favor constitutes new evidence because the information

---

[4]Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins,* 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact." *Id.*

[5]On November 21,  2002 Jamar Brown entered a guilty plea to his involvement in the April 8, 2002 robbery. (*See Doc. No. 15, Exh. F, Doc. No. 34, Exh. P.*)

concerning the alleged misconduct by the prosecutor was not known or available to him until

on or about March 30, 2003 when he received Brown's affidavit.  (*Doc. No. 2 at 1-2*.)

The Alabama Court of Criminal Appeals addressed Greenwood's claim of newly

discovered evidence.  It determined the following:

> The appellant contends that the trial court erred in failing to vacate his conviction, based upon his claim of newly discovered evidence.  He argues that the testimony of Jamar Brown was "newly available" because Brown refused to testify at Greenwood's trial; that Brown's testimony was not cumulative because there was no other eyewitness who would testify that Greenwood was not the accomplice; and that the result probably would have been different if Brown's testimony had been available because only one witness testified to Greenwood's guilt.  He also argues that Brown's affidavit provided newly discovered evidence of "prosecutorial misconduct in intimidating a key witness."

> The appellant filed as an exhibit an affidavit executed by Jamar Brown on March 18, 2003, in which Brown stated that he did not know Greenwood and that Greenwood was not with him at the time of the robbery.  Brown said that he gave this information about Greenwood to the prosecutor when he pleaded guilty on November 21, 2002; that she told him they had a case on Greenwood if he [Brown] did not testify; and that she would see about getting him [Brown] a split sentence or probation if he would "work with" her.  Brown said that he was called to court on December 11, 2002, the day before he was sentenced, and he repeated the information abut Greenwood to the prosecutor, a "white guy," and Greenwood's counsel.  He also said that he told them that he was not willing to testify at Greenwood's trial.  Brown said that he executed the affidavit because he subsequently learned that Greenwood had been convicted of the robbery.

> In order to prevail on a claim of newly discovered evidence, a petitioner must show: (1) The facts were not known by the petitioner or his counsel at the time of trial or sentencing or in time to file a Rule 24 motion or include them in a previous collateral proceeding, and they could not have been discovered by the exercise of reasonable diligence; (2) the facts are not merely cumulative; (3) the facts do not merely amount to impeachment evidence; (4) if the facts had been known at trial or sentencing, the result probably would have been

10

different; and (5) the facts establish that the petitioner is innocent or should not have received the sentence he received.  Rule 32.1(3), Ala. R. Cri.. P.  Here, the appellant admits that he was aware of Brown's claim at the time of trial, but he argues that this evidence was "newly available to him because Brown refused to testify before he [Brown] was sentenced and the two of them were incarcerated in separate facilities after that time.

The appellant has not proven his claim by a preponderance of the evidence, as required by Rule 32. 3, Ala. R. Crim. P.  Jamar Brown was sentenced on December 12, 2002. There is no evidence that Brown was unwilling to execute an affidavit as soon as his sentence was pronounced, as his testimony would have cost him nothing after that time.  The appellant has not shown that he could not have obtained Brown's affidavit in time to file a motion under Rule 24, A. R. Crim. P.

It is not unusual for a codefendant to seek to exculpate his accomplice and, when such testimony would cost him nothing, it should be "carefully scrutinized."  Marks v. State, 575 So. 2d 611, 617 (Ala. Cr. App. 1990). Unless the evidence against the appellant is ambiguous or weak, the trial court does not abuse its discretion by finding that a codefendant's post-conviction willingness to testify does not warrant a new trial.  Id.  Here, the victim positively identified the appellant as Jamar Brown's accomplice, and Brown's statements regarding Greenwood and the robbery were merely cumulative to Greenwood's own testimony at trial.  The jury found Greenwood's claims unconvincing, and it is unlikely that Brown's testimony would have changed the result of the trial.

(*Doc. No. 15, Exh. F at 3-4.*)

Greenwood's allegation regarding newly discovered evidence fails on the merits because the state court's decision was neither contrary to nor an unreasonable application of clearly established Federal law nor "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). A state court's determination of a factual issue is presumed to be correct, and is unreasonable only where the petitioner meets the burden of "rebutting the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1). Here, Greenwood has failed to meet this high standard.

The Alabama Court of Criminal Appeals referenced Brown's affidavit in its decision noting that Greenwood argued that the affidavit provided newly discovered evidence of prosecutorial misconduct in intimidating a key witness. The Criminal Appeals Court concluded that Greenwood had not proven his claim of newly discovered evidence by a preponderance of the evidence as he failed to show that Brown was unwilling to execute an affidavit as soon as his sentence was pronounced as his testimony would have cost him nothing at that time. The appellate court, therefore, reasoned that Greenwood had not shown that he could not have produced Brown's affidavit in time to file a motion under Rule 24, A.R.Crim.P. (*Doc. No. 15, Exh. F at 4*.) The Alabama Court of Criminal Appeals' decision is supported by the record as the following testimony presented at the conclusion of Greenwood's trial reflects:

```
THE COURT: Mr. Greenwood, of course, you were back in the
deliberation room and we had a monitor back there. And I need to
know, were you able to hear the Judge's jury charge?

. . .

THE DEFENDANT: Yes.

THE COURT: Okay. And I think there were deputies – two deputies
back there, and y'all could hear it as well?

THE BAILIFF: Yes, ma'am.

THE COURT: I had – the Sate had hurriedly asked for a mistrial at
one time. And, let me just say this, I'm not going to let –

MS. PERKINS: We withdraw that motion.

THE COURT: Okay. Well, I was going to say, I don't think the
conduct – I'm not going to let error be invited into the record.
But you withdraw?
```

MS. PERKINS: Yes, Judge.

THE COURT: Now, Mr. Greenwood, I got your letter or your note. And, of course, you're still referring to Jamar Brown, and although, we went over some things yesterday, I want to be sure it's in the Record. And Mr. Brown's attorney, Mr. Durant, was here yesterday and is here as well. And is there anything anyone wants to say regarding Mr. Brown?

MR. HARTLEY: I will start, Judge, by saying that, first of all, prior – some time ago, Mr. Brown had pled guilty in this matter. Yesterday morning, I talked to Mr. Durant before I went and spoke to Jamar Brown. I asked Mr. Durant if it was okay if I went and talked to him, because I had some information that said that he might testify in a way that would be beneficial for Kourtney Greenwood. I went to the jail yesterday morning and sat with Mr. Brown, explained to him my role in the case. I understood that he had already pled guilty. I don't think I had attended his guilty plea, so I asked him what he would be saying pertaining to Kourtney Greenwood's participation in the  – or lack of participation in the offense.

I'll just summarize that he represented that he would be a witness for the defense. I then proceeded to the part of the jail where Mr. Greenwood was and told him. I said, I cleared it with Mr. Durant. I talked to Mr. Brown, and I think he's going to be a defense witness. I –

THE DEFENDANT: State what –

MR. HARTLEY: Well – coming to your defense, stating that Kourtney Greenwood was not at the scene and that he was not acquainted with him. So I advised the Judge's office that we were going to need him for a witness. A little later in the day, I believe – I'm trying to remember who told me – but a deputy or some court personnel told me that Mr. Brown was not – had said something about not testifying. At that point, because I really did want his testimony, we had a meeting in the holding cell there that consisted of myself, Mr. Durant, Mr. Brown, Vernetta Perkins, and the District Attorney Richard White. I think that was who all was there; is that right?

MS. PERKINS: (Attorney nods.)

MR. HARTLEY: Mr. Brown's reservation seemed to be that he thought his testimony, if it was favorable for the defense, might adversely affect his sentence in the case, because he has not been – he has not been sentenced yet – in every way we though was ethically and correct – legally correct, we tried to admonish Mr. Brown to testify. We appealed to his attorney. We appealed to the DA's office to speak to him. All of that to no avail. And I really regret that, because I really – did want Mr. Brown's testimony.

THE COURT: And let me say in this regard. We've had the transcript of Mr. Brown's plea – and that's Court Exhibit A, and it's in the Record. And when the State was putting on its offer of proof, Mr. Greenwood, it was stated that he was with Mr. Brown on that occasion.

13

MR. HARTLEY: Of course, Judge, we think that that is what the Record says.  We think that it is typical - that was an offer from the State, and he just said yes to -

THE COURT: I'm just simply saying that that's part of the Record.

MR. HARTLEY: However, yesterday, he said he had told the State and told his attorney, and - and made several references, he said that he had told them that Kourtney Greenwood was not there and he didn't know Kourtney Greenwood.  He made that representation and led us to believe that it was on the Record.  But he did say that that's what his position was, but he refused to testify as such in the trial.

THE COURT: Well, that was not on the Record, that -

MR. HARTLEY: Right. But it -

THE COURT:  - representation.

MR. HARTLEY: - but he said that he represented that to the DA's office.

MS. PERKINS: Judge, may I -

THE COURT: Yes.

MS. PERKINS: I have said on the record more than one time that Mr. Brown did tell myself and Mr. Durant again yesterday in front of Mr. Hartley. And I think we brought both of them out here.  He did say - and I have said it on the Record more than one time - that he did tell me he did not know Kourtney Greenwood on the Record.  At the same time, when I did do the offer of proof, he did say, Yes - yes, this is what the facts show. Don't know what he meant - was not in his head - but, as we normally do the offer of proof, he accepted that in order to get his plea - that version of the facts in order to get his plea of guilty.  He did represent to me that he did not know - did not know Mr. Greenwood.  I was back there.  Mr. Durant was back there.  Mr. Hartley and Mr. White.  I told Mr. Brown, as well, in presence of his attorneys and everybody else, that what the State wanted him to do was testify truthfully, then get on the witness stand, tell the truth and then there would be no problem. If he gets on the witness stand and lies, then that would be a problem for me.

I told him that the State of Alabama does not do sentencing.  The Court does sentencing.  And all of that was communicated to him. Once we all had the conversation with him, he said that he did not want to testify.  And that's what he decided.  Was that because we had a witness here saying that they did know him.  I don't know what that was.  But he decided that he did not want to testify.  And that's a decision that was made.  That's were we stand.

MR. DURANT: And, Judge, may I add that after everyone had left, all of the attorneys, I spoke to Mr. Brown myself.  And I indicated to him that he was the one to make the decision, whether he was going to testify or not.  That all we wanted him to do was -

MS. PERKINS:  - tell the truth.

14

MR. DURANT:  -to tell the truth. And, at that time, he indicated to
me that he did not want to testify.  And I - I subscribe to what
everyone has said, he has - he has, from the outset, said he did not
know Mr. Greenwood.

THE COURT: Okay. I just wanted all of this to be on the Record.

MR. HARTLEY: And could I ask Mr. Durant one question?

THE COURT: Yes.

MR. HARTLEY: Did he express a reservation because he thought it
would affect his sentence?

MR. DURANT: Yes, he did.

MS. PERKINS: But wasn't he communicated to - and I want to clear
this up for the Record, because I don't want there to be any
confusion if there is an appeal or something.  He was told over and
over by the Court, by myself, by Mr. Durant, and by you that none of
us have an effect on sentencing.  There was no threats made to him
or promises on either way concerning his sentence.  As a matter of
fact, he was told that the State of Alabama, out of my mouth in the
presence of both of you all, that the District Attorney's office
does not sentence.  The Court does that.  And all  the State of
Alabama wanted him to do was testify truthfully.

MR. DURANT: And I told him the same thing when we were alone.

THE COURT: Okay.  Well, that's all for now.

THE DEFENDANT: Ms. Greenhaw, I was - when all this saying was going
on, I was in the little holding cell right there, listening and
looking at everything.  And I know what - exactly what they said.
And he looked - Mr. Brown looked exactly at Ms. Perkins, and she
leaned back and looked at him, and said that - he knew - he said, I
go to sentencing this week.  I ain't fixing to go in there in front
of those folks like that, because I go for sentencing.  I know what
ya'll goin' try to do.  You know, what I'm saying.  I know what's
going - I ain't going in there just like this.  I ain't going in
there like this.

I'm standing right there in the holding cell looking -

THE COURT: Okay.  Well, I think everyone is - there's not much
disagreement about what occurred. Okay.  That's all for right now.

(*Doc. No. 34, Exh. P at TR. 204-212.*)

Greenwood has not demonstrated, nor does the record  support, a claim of  newly

discovered evidence of prosecutorial misconduct  based on  prosecutorial interference with

Brown's decision not to testify. "A defendant who claims that he was denied the due process

15

of law through government intimidation of defense witnesses must establish, as a 'threshold

matter,' that the actions of the government 'worked to deprive him of a witness who would

have testified on his behalf.'" *United States v. Stewart,* 820 F.2d 370, 375 (11th Cir. 1987)

quoting *United States v. Garmany*, 762 F.2d 929, 937 (11th Cir. 1985).  While courts have

held that a variety of prosecutorial and judicial actions aimed at discouraging defense

witnesses from testifying deprive the criminal defendant of his right to due process, *Webb*

*v. Texas,* 409 U.S. 95 (1972) (*per curiam*), prosecutors do not commit a *Webb* error merely

by warning defense witnesses about the consequences of testifying. *See United States v.*

*Pierce*, 62 F.3d 818, 832-33 (6th Cir. 1995). Here, Greenwood's claim that Brown's affidavit

constitutes newly discovered evidence that the prosecutor engaged in conduct aimed at

discouraging Brown from testifying on Greenwood's behalf is not supported by the evidence

of record, nor, as the appellate court noted, was there evidence that Brown could not have

executed an affidavit immediately after he was sentenced as his testimony at that time would

have cost him nothing.[6]  Based on the foregoing discussion and, as noted,  from its own

---

[6]The record clearly indicates that during his guilty plea proceedings, Brown fingered Greenwood as his accomplice in the robbery, that Brown entered his guilty plea prior to Greenwoods' trial, and that Greenwood's trial was held prior to Brown's sentencing proceedings. Had Brown testified at Greenwood's trial that he did not know Greenwood and that Greenwood was not his accomplice, it can be inferred from the transcript that he understood that such action would have caused him to perjure himself in relation to the facts on which his guilty plea was based, which in turn, "would be a problem for [the District Attorney]" trying Greenwood's case.  At the time of Greenwood's trial, both Greenwood and Brown were  aware that Assistant District Attorney Perkins emphatically stated before the trial court that no promises or inducements were made to Brown with respect  to his decision as to whether or not to testify at Greenwood's trial, that he was simply told to tell the truth if he decided to testify at Greenwood's trial,  and that  he was informed by her, the trial judge, Greenwood's trial counsel, and his own attorney  that the State of Alabama was not involved in sentencing criminal defendants and that sentencing is a matter for the trial court. (*See Doc. No.*

(continued...)

independent review of the evidentiary materials filed herein, the undersigned finds that the state court's rejection of Greenwood's newly discovered evidence of prosecutorial misconduct claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Williams v. Taylor*, 529 U.S. at 412, 413. This decision was likewise a reasonable determination of the facts in light of the evidence presented. *Id*.; *see also* 28 U.S.C. § 2254(d)(1) & (2). Consequently, Greenwood is not entitled to habeas relief on this claim.[7]

## D. The Ineffective Assistance of Counsel Claim

Greenwood argues that he received ineffective assistance of counsel because counsel failed to subpoena a key witness, Serillo, which violated his right to confront witnesses in violation of the Sixth and Fourteenth Amendments to the Constitution. The Alabama Court of Criminal Appeals applied *Strickland v. Washington*, 466 U.S. 668 (1984) in affirming the lower court's decision with respect to this particular allegation of ineffective assistance of counsel. (*Doc. No. 15, Exh. F at 4-5*.) *Strickland* sets forth the clearly established federal law on this issue. Thus, this court will determine whether the state courts' rejection of Greenwood's claim of ineffective assistance of counsel "resulted in a decision that was

---

[6](...continued)
*34, Exh. P, TR. 62, 205-212*.)

[7]Assuming, *arguendo*, that Greenwood presents a claim of ineffective assistance of counsel based on his prosecutorial misconduct claim (*see Doc. No. 37*), given this court's determination that the claim of newly discovered evidence of prosecutorial misconduct lacks merit, Greenwood cannot establish that trial counsel was ineffective under the *Strickland* standard. *See Strickland*, 466 U.S. at 687-688.

17

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  Greenwood must satisfy the requirements of a two-pronged test to prevail on his claims of ineffective assistance of counsel.  First, Greenwood must establish that his attorney's performance "fell below an objective standard of reasonableness."  *Strickland* 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  Once this threshold test is met, the petitioner must then show that the deficient performance of his counsel prejudiced his defense.  *Id.* at 687.  To establish prejudice, Greenwood is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Unreliability or unfairness does not result if counsel's ineffectiveness does not deprive the defendant of any substantive or procedural right to which the law entitles him.  *Williams*, 529 U.S. at 393 n. 17.  There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy.  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation."  *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).

In its decision rejecting Greenwood's challenge to trial counsel's performance, the Alabama Court of Criminal Appeals determined:

> Strickland v. Washington, 466 U.S. 668 (1984), requires an ineffective assistance claimant to show that the performance of his counsel was deficient and that the deficiency prejudiced the defense. The appellant's first claim is insufficient because he did not show that his counsel could have located Serillo[2] or that Serillo would have testified favorably at the trial. He also offered no evidence that his children would have testified that he was babysitting at the time of the offense. Victim Larry Copeland, Jr., clearly identified Greenwood as the accomplice, and the jury rejected Greenwood's claim that he was babysitting when the robbery occurred. It is doubtful that cumulative testimony from child witnesses would have changed the result of the trial.
>
> FN2. The appellant admits that Larry Copeland, Jr., "with[h]eld Serillo's identity [and last name] from the police."

(*Doc. No. 15, Exh. F at 5*.)

Greenwood argues that counsel's failure to subpoena Serillo prejudiced him because Serillo was the only other victim and eye-witness to the crime. Greenwood maintains that Serillo would have testified that Greenwood "was not the person who held him during the robbery, and thus not Brown's Accomplice." (*Doc. No. 2 at 8*.)

Greenwood has not demonstrated prejudiced based on this allegation of attorney error as he has failed to show that Serillo could have been located even if he had been subpoenaed or that his testimony, if adduced, would have been favorable. As noted previously, the appellate court affirmed the trial court's decision denying the claims presented in Greenwood's post-conviction pleading including his challenges to trial counsel's performance. Accordingly, the instant challenge to trial counsel's performance was rejected

19

on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. The present challenge to trial counsel's performance should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Based on the record before it, the court concludes that defense counsels' performance concerning his failure to subpoena Serrillo was not deficient. Even assuming, *arguendo*, deficient performance by defense counsel, Greenwood has not shown prejudice. Self-serving speculation about the testimony of a putative witness will not sustain an effective assistance of counsel claim. *United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991). Rather, to succeed on a challenge to trial counsel's failure to call a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony which may be presented in the form of actual testimony by the witness or through a witness' affidavit. *Id*. Where a petitioner fails to make the necessary factual showing, his mere conclusory allegations are insufficient to demonstrate that trial counsel acted deficiently in failing to call witnesses to testify. *See Strickland*, 466 U.S. at 688-689; *see also Williamson v. Moore,* 221 F.3d 1177, 1181 (11th Cir. 2000) (holding that "[c]ounsel cannot be said to be ineffective for failing to call an unavailable witness.") (citation omitted).

Greenwood has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had taken the action that Greenwood alleges he should have taken. Upon a thorough review of the record and the applicable law, it is clear

that Greenwood is not entitled to relief on the basis of this claim of attorney error because the state courts' adjudications of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, the state court's decision on this challenge to trial counsel's conduct shall not be disturbed.

E.  *The Evidentiary Hearing Claim*

Greenwood argues that he was entitled to an evidentiary hearing in his Rule 32 proceedings with regard to the issue of whether trial counsel acted deficiently when he failed to subpoena a key witness, Serillo. The Alabama Court of Criminal Appeals denied relief on this claim finding that Greenwood failed to state a claim that would entitle him to relief. (*Doc. No. 15, Exh. F at 2-3.*)

A federal court is to entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Demonstration of a violation of the Constitution is necessary before a federal court may entertain a petition for writ of habeas corpus. *Clarke v. State of Florida,* 648 F. SUPP. 307 (S.D. Fla.1986). A federal court is not concerned with violations of state law unless the violation raises federal constitutional problems. *Wilcox v. Ford,* 813 F.2d 1140, 1145 n. 7 (11th Cir. 1987). A state's interpretation of its own laws and

rules provides no basis for federal habeas corpus relief. *Beverly v. Jones,* 854 F.2d 412 (11th Cir.1988).

The instant claim for relief raises an issue concerning a State's interpretation of its own rules and procedures. It, therefore, provides no basis for federal habeas corpus relief since no question of a constitutional nature is involved. *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir. Unit B, June 1981).

*F. Procedural Default*

Respondents argue that the following claims for relief are procedurally defaulted because they were not presented properly in the state courts in accordance with the state's procedural rules: 1) trial counsel failed to subpoena Jamar Brown to testify at trial; 2) trial counsel failed to properly investigate the substance of the victim's testimony by failing to obtain a copy of his testimony from Greenwood's first trial; 3) Greenwood received ineffective assistance in the preparation of his two post-conviction proceedings with regard to the manner in which his newly discovered evidence claim was presented in state court; and 4) trial counsel failed to present a constitutionally adequate alibi defense by failing to properly investigate his whereabouts on the day of the robbery and by failing to sufficiently investigate accomplice testimony which would have corroborated his alibi testimony. Respondents argue that these allegations are defaulted because they are raised for the first time in the instant petition. *See Coleman v. Thompson*, 501 U.S. 722, 732; (1991); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *O'Sullivan v. Boerckel*, 526 U.S.526, 844-45

(1999); *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997); *Teague v. Lane*, 489 U.S. 288 (1989).

This court may reach the merits of Greenwood's procedurally defaulted claims "only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default.  *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)]. ... Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice.  *Murray*, 477 U.S. at 495-96, 106 S.Ct. at 2678.  A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent.  *Id*."  *Henderson*, 353 F.3d at 892.

*i. Cause and Prejudice*

"To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir.1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892.

The court entered orders advising Greenwood of his procedural defaults and allowing him an opportunity to file responses addressing his defaults. (*Doc. Nos. 16, 22*.) The court finds from the pleadings before it that Greenwood does not challenge the conclusion that he is procedurally defaulted on the above-noted claims; rather he asserts that this court should ignore his procedural defaults and address the merits of his defaulted claims because (1) he only had layman assistance to help him with preparation of his state collateral proceedings; (2) he lacked adequate knowledge of legal procedures; (3) "trial counsel's ineffectiveness impeded his efforts to raise the claim in state court;" and (4) he is actually innocent of his robbery conviction. (*Doc. No. 2 at 13-14; Doc. No. 23 at 11-12.*)

With regard to Greenwood's complaint that trial counsel impeded his ability to raise "the claim" in the state court, the court finds that this assertion of ineffective assistance of counsel does not in any way justify Greenwood's failure to present his claims in a Rule 32 petition. To the extent Greenwood alleges a lack of post-conviction counsel as cause for his defaulted claims, this claim likewise entitles him to no relief. The law is well settled that

there is no federal constitutional right to counsel in state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 556-557 (1987); *Arthur v. Allen*, 452 F.3d 1234, 1249 (11th Cir. 2006), *modified on reh'g*, 459 F.3d 1310 (11th Cir. 2006); *Henderson*, 353 F.3d at 892; *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993); *Presnell v. Zant,* 959 F.2d 1524, 1532 n. 6 (11th Cir. 1992).  Consequently, the lack of representation during state collateral proceedings cannot establish "cause" for a procedural default.  "Since [the petitioner] had no sixth amendment right to counsel, he bears the burden of his failure to act in compliance with [the state's procedural rules]."  *McCoy v. Newsome*, 953 F.2d 1252, 1259 (11th Cir. 1992).

        With respect to Greenwood's reliance on the erroneous advice of inmate law clerks and his lack of legal knowledge as cause, these claims also provide no basis for relief from applicable procedural bars.  A petitioner's reliance on the assistance and erroneous advice of an inmate clerk fails to establish extraordinary circumstances necessary to excuse a procedural default. *Whiddon v. Dugger*, 894 F.2d 1266, 1267 (11th Cir. 1990) (poor advice from inmate law clerks during collateral proceedings will not establish petitioner's claim of cause for a procedural default as there is no right to legal counsel in such proceedings); *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) ("The fact that an inmate law clerk was assisting in drafting [pleadings] does not relieve [petitioner] from the personal responsibility of complying with the law.").  Moreover, ignorance of the law fails to establish cause for a procedural default.  *Harmon v. Barton*, 894 F.2d 1268 (11th Cir. 1990); *Smith v.*

25

*Newsome*, 876 F.2d 1461 (11th Cir. 1989); *Spencer v. Kemp*, 781 F.2d 1458, 1462 (11th Cir. 1986); *see also Wakefield v. Railroad Retirement Board*, 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law "is not a factor that can warrant equitable tolling."); *Marsh*, 223 F.3d at 1220 ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.' *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)."); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998) (equitable relief from procedural bar not justified by fact that petitioner did not understand the law).

Based on the foregoing, the court concludes that Greenwood has failed to demonstrate either cause for his failure to present his defaulted claims to the state courts in compliance with applicable procedural rules or the existence of actual prejudice emanating from infringement of federal law.   Nevertheless, this court may still reach the merits of Greenwood's procedurally defaulted claims in order to prevent a fundamental miscarriage of justice.

### ii.  Fundamental Miscarriage of Justice

The miscarriage of justice standard is directly linked to innocence. *Schlup v. Delo*, 513 U.S. at 321.  Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted.  *Id.* at 315.  This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Id*. at 327 (*citing Murray*, 477 U.S. at 496).  To meet this standard, a petitioner

26

"must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States,* 523 U.S. 614, 623 (1998) (*citing Schlup*, 513 U.S. at 327-328). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623-624 (*citing Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

> *Schlup* observes that

> > a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*. at 324.

Greenwood argues, as he did throughout the trial of his case, that he is factually innocent because he did not participate in the robbery.  Greenwood, however,  presents only his self-serving, conclusory allegation that his actions did not constitute commission of the offense for which a duly empaneled jury found him guilty.  Moreover, as discussed *infra*, Greenwood has submitted no "new reliable evidence" to support his assertion of innocence nor has he suggested that any such evidence exists to establish his actual innocence so as to meet the standard set forth by *Schlup*.  Consequently, Greenwood's procedurally defaulted claims are foreclosed from federal habeas review.

### III.  CONCLUSION

27

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner Kourtnee Greenwood be DENIED and DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **December 26, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 12th day December of  2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE